STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-02-015

GAF - YOR - 9/11 2002

JOHN P. MALICK, Jr.

Petitioner

v.

ORDER

DONALD L. GARBRECHT
LAW LIBRARY

SEP 18 2002

MAINE UNEMPLYOMENT
INSURANCE COMMISSION,

Respondent

This matter is before the court on petition for review of final agency action pursuant to 5 M.R.S.A. §§ 11001-11008, 26 M.R.S.A. § 1194(8), and M.R.Civ.P. 80C.

## FACTS

On October 10, 2000, John P. Malick, Jr. (petitioner) started to work at jungleMD, Inc. (employer), which operated a call center that sold natural products. The petitioner was employed as a sales representative. The employer was pleased with the petitioner's overall job performance. However, the employer discharged the petitioner in response to the following series of incidents. After hanging up with a difficult customer on December 22, 2000, the petitioner referred to the customer as a "black bitch." As a result, the employer reprimanded the petitioner, issuing him a written warning, which he signed. The warning noted that any further incidences of this type would not be tolerated by the employer.

On January 26, 2001, while out on the sales floor, the petitioner commented to a male co-worker about a female co-worker's body. The employer received a complaint

1

about the matter and issued the petitioner another written warning. The petitioner signed the warning, which noted that this was the petitioner's second admonition in five weeks and therefore any further misconduct would result in termination. On March 9, 2001, the employer's human resources manager spoke with a female employee, who accused the petitioner of inappropriately staring at her breasts. The human resources manager verbally warned the petitioner that such behavior would not be tolerated in the workplace.

On August 3, 2001, another female employee alleged that the petitioner was constantly staring at her breasts. As a result, the human resources manager suspended the petitioner until an investigation could be completed. While investigating the sexual harassment claim, the human resources manager collected three written statements from female employees, who complained that the petitioner had inappropriately stared at their bodies, making them feel uncomfortable. On August 7, 2001, the petitioner and the employer met to discuss the situation; the petitioner explained that he was surprised by the complaints. Later that day, the employer terminated the petitioner's employment based on the incidents mentioned above.

After being fired, the petitioner filed for unemployment benefits. The Deputy at the Bureau of Unemployment Compensation decided that the petitioner was ineligible for benefits because the evidence established that the petitioner was properly discharged for misconduct. The petitioner appealed the Deputy's decision to the Division of Administrative Hearings. An Administrative Hearing Officer set aside the Deputy's decision because most of the evidence against the petitioner consisted of hearsay, which failed to satisfy the employer's burden of proving that the petitioner committed a culpable breach of his employment duties or that he engaged in a pattern of irresponsible behavior at the workplace. The employer then appealed to the Maine

2

Unemployment Insurance Commission (Commission), which heard the additional testimony of two of the women who had written out complaints against the petitioner. The Commission set aside the Administrative Hearing Officer's decision, determining that the petitioner's misconduct was related to his employment activities. After the Commission denied the petitioner's request for reconsideration, the petitioner appealed to this court.

## DISCUSSION

Pursuant to the petitioner's Rule 80C appeal, this court reviews the Commission's decision "directly for abuse of discretion, errors of law, or findings not supported by the evidence." Centamore v. Dep't of Human Serv., 664 A.2d 369, 370-71 (Me. 1995). Because the current dispute involves the Commission's interpretation of a statute that it administers, the Commission's interpretation, while not conclusive, should be given great deference and will be upheld unless the statute clearly compels a different result. See id. In the present case, the Commission decided that the employer terminated the petitioner for misconduct connected to his employment within the meaning of 26 M.R.S.A. §§ 1193(2) and 1043(23). The former statute essentially states that if the Deputy finds that the employer discharged the petitioner for misconduct connected to his work, then the petitioner shall be disqualified from receiving benefits. See 26 M.R.S.A. §1193(2) (2002). The latter statute defines misconduct as "a culpable breach of the employee's duties or obligations to the employer or a pattern of irresponsible behavior, which in either case manifests a disregard for a material interest of the employer." 26 M.R.S.A. §1043(23) (2002).

The Commission then looked to see if the petitioner engaged in one of the following three acts or omissions that "are presumed to manifest a disregard for a

3

material interest of the employer" because "[i]f a culpable breach or a pattern of irresponsible behavior is shown, these actions or omissions constitute 'misconduct' as defined in this subsection" 26 M.R.S.A. §1043(23)(A) (2002). The following actions are presumptive of misconduct:

> 2.Unreasonable violation of rules that are reasonably imposed and communicated and equitably enforced;

> 3. Unreasonable violation of rules that should be inferred to exist from common knowledge or from the nature of the employment;

> 9. Insubordination or refusal without good cause to follow reasonable and proper instructions from the employer.

*Id.*

The Commission found that the petitioner had unreasonably violated the employer's rules by engaging in a pattern of work-related misconduct that included the racial slur incident, the inappropriate language incident, and the inappropriate staring incidents. (R. at 18.) Moreover, the Commission found that the petitioner's conduct manifested a disregard for the employer's material interests by making other employees feel so uncomfortable at work that they had to adjust their own habits and work practices. *Id.* Similarly, the petitioner continued to stare inappropriately at female co-workers in spite of the employer's written warnings. (R. at 19.)

In this case, even though the petitioner admitted to violating his employer's rules, it does not mean that the petitioner's conduct rose to level of statutory conduct. *See* Forbes-Lilley v. Unemployment Ins. Comm'n, 643 Ad 377, 379 (Me. 1994). To establish misconduct, the Commission needed to determine that the employer had a reasonable standard for discharge and that the petitioner acted unreasonably in failing to meet the employer's standard. *See id.* Moreover, the Commission needed to measure the petitioner's behavior as the objective manifestation of intent. *See id.* The record

4

shows that the employer had given the petitioner sexual harassment training and had an employee handbook that outlined a system of progressive discipline leading up to discharge. (R. at 166-167, 321-322.) The record as detailed above also showed that the petitioner acted unreasonably, as measured by any standard, when he continued to ignore the employer's verbal and written warnings to stop engaging in behavior that offended his co-workers. Therefore, the Commission had reasonably concluded that the employer had met its burden of proving that the petitioner was discharged for misconduct pertaining to work.

In his brief, the petitioner argued that the Commission had reached the wrong result because two of the female employees, who reported him for sexual harassment, were lying. (Malick Br. at 1-2.) Decisions concerning the credibility of witnesses are left to the Commission and here these decisions are supported by the evidence. *See* Lewiston Daily Sun v. Unemployment Ins. Comm'n, 1999 ME 90, ¶7, 733 A.2d 344, 346.

The petitioner quotes in his brief extensively from the decision of the Administrative Hearing Officer to back up his assertions that the only evidence against him was hearsay. (Malick Br. at 6-11.) One of the Administrative Hearing Officer's chief concerns was as follows:

> In this case, the employer chose to have none of the declarants of the offered hearsay present for the hearing. The evidence suggests some potential for bias against the claimant on the part of those declarants. Given the arguably subtle nature of the alleged harassment following January 2001, which involved looking and not gesturing or speaking, it would seem particularly important to test the accuracy of the perceptions of the alleged victims. Without any of the alleged victims present, this would be impossible.

(R. at 134; Malick Br. at 5-6.)

5

The Commission, however, did not merely base its decision on the old record. Pursuant to 26 M.R.S.A. § 1194(5), the Commission heard the additional testimony of two of the petitioner's former female co-workers who testified that he inappropriately stared at their bodies as well as the bodies of other female employees. (R. at 33-61.) The fact that the Commission chose to believe their testimony was a determination exclusively in the province of the Commission, which this court will not disturb on appeal. *See* Sprague Electric Co. v. Maine Unemployment Ins. Comm'n, 544 A.2d 728, 732 (Me. 1988).

Hence, the Commission based its decision on the substantial evidence in the record and committed no abuse of discretion or legal error.

The entry shall be:

**Appeal Denied.**

The clerk may incorporate this order in the docket by reference.

Dated: September //, 2002

G. Arthur Brennan
Justice, Superior Court

PLAINTIFF:   PRO SE
PO BOX 7464
OCEAN PARK   ME   04063-7464

DEFENDANT:
ELIZABETH WYMAN   AAG
6 STATE HOUSE STATION
AUGUSTA   ME 04333-0006